UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Paulo Martinez,   Case No. 22-cv-1390 (JRT/DTS)

    Petitioner,

v.   **REPORT & RECOMMENDATION**

B. Eischen,

    Respondent.

Petitioner Paulo Martinez filed a habeas petition seeking to reinstate privileges revoked by disciplinary sanctions, as well as the expungement of his disciplinary record, following a DHO decision that Martinez committed the prohibited act of possessing a contraband cell phone charging cord and port. Dkt. No. 1. Petitioner argues prison staff violated his due process rights by failing to timely provide a written copy of the DHO report following his disciplinary DHO hearing.[1] *Id.*; Dkt. No. 10. Respondent concedes the delay in the delivery of the written DHO report, but contends the delay did not prejudice Martinez's due process rights. Dkt. No. 6.

**FINDINGS OF FACT**

Martinez is incarcerated at the Federal Prison Camp at Duluth, Minnesota (FPC Duluth). Dkt. No. 8 at 1. He is serving a 60-month term of imprisonment for possession of a firearm in furtherance of a drug trafficking crime. *Id.* Martinez's projected good conduct release date is December 24, 2024. *Id.* On March 15, 2022, Martinez was

---

[1] Martinez drafted his petition on May 19, 2022, before he received the DHO written report on May 23, 2022. After the written report was provided, Martinez's claims about the prison's failure to provide the written report became moot. Accordingly, only claims pertaining to the alleged delay in providing the report will be considered.

discovered with a prohibited cell phone cord and charging port in his possession. Dkt. No. 6 at 4.

When Bureau of Prisons (BOP) staff witness or reasonably believe an inmate has committed a prohibited act, they document the alleged violation with an incident report. Dkt. No. 8, Ex. A at 18. The inmate is provided a copy of the incident report, ordinarily within 24 hours of when staff become aware of the incident. *Id.* at 19. After the inmate receives the incident report, a staff member investigates the incident. *Id.* The inmate is given the opportunity to make a statement during the course of the investigation, and may request certain witnesses be interviewed or request that other evidence be obtained and reviewed. *Id.* While an inmate may remain silent at all stages of the discipline process, silence may be used to draw an adverse inference of guilt. *Id.*

Upon completion of the investigation, the investigator refers the incident report to the Unit Disciplinary Committee (UDC) for an initial hearing, ordinarily held within five workdays of the incident report's issuance. *Id.* at 24-25. An inmate is permitted to appear before the UDC during its review and is entitled to make a statement and present documentary evidence to the UDC. *Id.* at 25. The UDC can impose minor sanctions for certain disciplinary violations. *Id.* If an inmate is charged with a serious violation that warrants consideration of more than minor sanctions, the UDC refers the incident report to the Disciplinary Hearing Officer (DHO) for further processing.

The DHO provides the inmate the opportunity to have a staff representative, to make a statement, and to present witnesses and documentary evidence. *Id.* at 28-31. The DHO will then determine whether: (1) the inmate committed the prohibited act charged and/or a similar prohibited act; (2) the inmate did not commit the prohibited act

charged; or (3) the incident report should be referred back for further investigation, review, and disposition. *Id.* at 28. The inmate receives a written report of the DHO's decision and disposition, "ordinarily within 15 work days of the decision." *Id.* at 35.

After Martinez was discovered with a prohibited cell phone cord and charging port in his possession on March 15, 2022, he was provided a copy of the corresponding written incident report on March 16, 2022, which cited him for disruptive conduct "most like possessing a hazardous tool." Dkt. No. 6 at 4. After the March 16 incident report was filed, the prison conducted an investigation into the incident. *Id.* at 5. Martinez declined to make a statement during the investigation. *Id.* at 5. The UDC conducted an initial hearing on the incident report on March 16, 2022. *Id.* Martinez was also given the opportunity to make a statement during the UDC hearing but declined to do so. *Id.* The UDC referred the incident report to the DHO for further proceedings following the initial hearing. *Id.*

During the UDC hearing, Martinez was informed of his rights to have a staff representative and to call witnesses at the forthcoming DHO hearing, but waived both. *Id.* at 5. The DHO hearing was held on March 31, 2022, during which Martinez declined to make a statement in his defense and did not present evidence or call witnesses. *Id.* The DHO reviewed the incident report and photos of the contraband, considered Martinez's failure to present any defense, and determined the greater weight of the evidence supported the charge. *Id.* at 6. The DHO sanctioned Martinez as follows: (1) disallowance of 41 days good conduct time; (2) 60 days disciplinary segregation; (3) 90 days loss of commissary privileges; and (4) 90 days loss of phone privileges. *Id.* at 6.

The DHO's sanctions were imposed on March 31, 2022. Dkt. No. 8, Ex. C. Sanctions are not available until an inmate is found to have committed a prohibited act. *See* C.F.R. § 541.8(g). Thus, the DHO had made her decision as of March 31, 2022, and sanctioned petitioner accordingly.[2] Therefore, the Court finds there was a 53-day period between the DHO decision on March 31, and the delivery of the written report on May 23.

## CONCLUSIONS OF LAW

Martinez argues his due process rights were violated by the delay in being provided the DHO report. Dkt. No. 1. Specifically, Martinez argues the delay both prevented him from timely appealing the sanctions imposed and "hindered Martinez from having an oppurtunity [sic] to marshal the facts and prepare a defense." Dkt. Nos. 1 at 2, 10 at 2. Martinez also asserts he was prejudiced by being placed in the Special Housing Unit (SHU) and being fired from his employment with the commissary department. Dkt. No. 10 at 2. Martinez seeks reinstatement of his good time credit and the privileges that were revoked by the DHO. Dkt. No. 1. Because the Court can resolve Martinez's habeas petition on the record, an evidentiary hearing is not necessary. *See Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983).

### A.   Petitioner's Burden

Martinez's claim is a procedural due process claim. *See Arias v. Barnes*, 2019 WL 9244885, at *6 (D. Minn. Oct. 21, 2019), *report and recommendation adopted*, 2020 WL 3642313 (D. Minn. July 6, 2020). To succeed on his claim, Martinez must establish

---

[2] This finding resolves an inconsistency in Respondent's briefings, which initially conceded there was a delay and later argued there was no delay by asserting the DHO made her decision on May 23, the same day the written report was provided. Dkt. Nos. 6 at 10, 15 at 2.

4

a violation—here, the delay in the delivery of the written DHO report—prejudiced his due process rights. *See Spencer v. Rios*, 2019 WL 9313598, at *5 (D. Minn. Apr. 23, 2019), *report and recommendation adopted,* 2019 WL 2373333 (D. Minn. June 5, 2019) ("[I]n the prison disciplinary context, even when a regulation is clearly designed to protect an inmate's due process right, relief is warranted only when the inmate shows prejudice to his rights"); *see also Adams v. Fed. Bureau of Prisons*, 2011 WL 7293381 *2 (D. Minn. Dec. 6, 2011) ("On a repeated and consistent basis, federal courts [have held] that in prison disciplinary cases, '[e]ven if a prison official's actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief.'").

To show prejudice to his due process rights, Martinez must demonstrate the delay resulted in a deprivation of life, liberty or property. *See Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). There is no question that Martinez has not been deprived of life or property. Therefore, to sustain his due process claim, Martinez must demonstrate the delay resulted in the deprivation of a liberty interest. *See id.*

### B.    Allegations Implicating a Liberty Interest

First, the Court notes the delay does not constitute an outright failure to comply with a regulation by a prison official here, as the relevant portion of the BOP's Inmate Discipline Program Statement (IDPS) does not create a mandatory rule, but rather creates a guideline. The applicable IDPS regulation states: "[t]he DHO gives the inmate a written copy of the decisions and disposition, *ordinarily* within 15 work days of the decision." *See* Dkt. No. 8, Ex. A at 35 (emphasis added). The use of "ordinarily" makes it clear this regulation is not a mandatory rule. *See Martinez v. Fisher*, No. 13-CV-1150

5

ADM/TNL, 2015 WL 3756150, at *6 (D. Minn. June 11, 2015) ("The regulation only provides that notice 'ordinarily' shall be during this time, which indicates notice during this [timeframe] is not mandatory."). Regardless, the 53-day time period between the DHO decision on March 31 and the delivery of the written report on May 23 substantially exceeds the 15-day period the IDPS recommends. Therefore, the Court will consider whether Martinez has alleged the delay prejudiced his rights by depriving him of a liberty interest.

Martinez argues the delay in the delivery of the DHO decision prevented him from timely appealing the administrative sanctions he received. He also asserts the delay "hindered Martinez from having an oppurtunity [sic] to marshal the facts and prepare a defense." Dkt. Nos. 1 at 2, 10 at 2. Additionally, Martinez appears to argue he was prejudiced by being placed in the Special Housing Unit (SHU) and being fired from his employment with the commissary department, though he does not clarify how the delay in the delivery of the DHO decision contributed to either. Dkt. No. 10 at 2.

Several of the harms Martinez alleges do not implicate liberty interests that could sustain a due process claim. The Due Process Clause does not protect prisoners from every adverse change in their confinement and does not, itself, create a protected liberty interest in any particular prisoner classification or eligibility for rehabilitative programs, *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, (1976). Further, "there is no federal constitutional liberty interest in having…prison officials follow prison regulations." *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir.2003). "[T]he fact that an agency failed to comply in all respects with its own regulations, even those designed for the protection of

6

certain individuals, does not automatically justify habeas relief or remand for additional proceedings." *Spencer v. Rios*, 2019 WL 9313598 at *5.

It is well established in the Eighth Circuit that an inmate does not have a liberty interest in remaining in the general prison population.  *See Smith v. McKinney*, 954 F.3d 1075, 1082 (8th Cir. 2020). Therefore, Martinez being placed in the SHU, a more restrictive form of confinement, does not implicate a due process right absent allegations of atypical treatment, which he has not alleged. *Id.* Further, Martinez's loss of his job in commissary does not implicate a liberty interest. *Mitchell v. Kirk,* 20 F.3d 936, 938 (8th Cir.1994) (holding inmates do not have a constitutional right to a particular prison job). Moreover, Martinez's loss of phone privileges for 90 days likewise does not implicate a liberty interest. *See Howard v. Hendrix*, 2019 WL 10745050, at *1 (E.D. Ark. Nov. 5, 2019), report and recommendation adopted, No. 2020 WL 5775186 (E.D. Ark. Sept. 28, 2020).

Martinez's only allegation that implicates a liberty interest pertains to the loss of Martinez's good time credits. *See Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (holding depriving an inmate of good time credits "as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause."). Specifically, Martinez argues the delay in the delivery of the written report resulted in his inability to defend against and appeal his disciplinary sanctions, including the loss of his good time credits. To succeed on his due process claim, Martinez bears the burden to demonstrate prejudice by showing the delay resulted in these alleged harms. *See Adams v. Fed. Bureau of Prisons*, 2011 WL 7293381 at *2 ("habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief.").

7

### C. Failure to Demonstrate Prejudice

Martinez has not met his burden to demonstrate how the delayed written DHO report prejudiced him, because he has not shown it contributed to the harms he alleges. First, Martinez has not alleged how the delay resulted in Martinez having less time to appeal the DHO decision. There is a multi-level administrative appeal process an inmate must follow to exhaust his or her administrative remedies.[3] 28 C.F.R. §§ 542.15, 542.18. An inmate has 20 days after receiving the written DHO report to initiate the appeal process. *Id.* Martinez received the written DHO report on May 23, 2022, which advised Martinez of his right to appeal within 20 days. Dkt. No. 8, Ex. G. Thus, Martinez received the same amount of time to appeal the decision—20 days—as an inmate who received his written DHO report within the ordinary 15-day timeframe.

Further, nothing in the record indicates that Martinez initiated the administrative appeal process. If Martinez failed to avail himself of the established administrative appeal process, there is no evidence this failure resulted from the delay in the delivery of the written DHO report. Because Martinez has not shown the delay impacted his ability to file an administrative appeal, he has not met his burden to show he was prejudiced by the delay. *See Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (holding an 8-month delay in delivering a written copy of the DHO decision did not prejudice inmate where the delay did not affect the inmate's ability to bring an administrative appeal).

---

[3] An inmate first appeals by filing a "BP-10" form and sending it to the appropriate regional office, which has up to 50 days to reply. The inmate may appeal a denial to the Central Office by filing a "BP-11" form within 30 days. An inmate has not exhausted his administrative remedies until the Central Office denies the appeal or does not respond within 60 days. 28 C.F.R. §§ 542.15, 542.18.

8

Similarly, Martinez has not provided any factual support for his assertion that the delayed DHO report prejudiced his ability to "marshal the facts and prepare a defense." Dkt. No. 10 at 2. Such an argument appears suspect, because the delay in providing the written DHO report necessarily occurred at a point in the disciplinary process where it could not have impacted Martinez's ability to present a defense. *See* Dkt. No 8, Ex. A. The DHO written report is not prepared until after the DHO hearing, and it is at the hearing that Martinez had (and waived) his opportunity to call witnesses and present evidence in his defense. *Id.*, Ex. G.

Martinez had his opportunity to prepare a defense during the period between receiving the written incident report and the March 31 DHO hearing. The subsequent delay between the March 31 DHO hearing and the May 23 provision of the written DHO report was irrelevant to Martinez's ability to present a defense and cannot show prejudice to Martinez's due process rights. These allegations are not sufficient to meet Martinez's burden to show the delay prejudiced his due process rights.

### D.    Martinez Received Procedural Due Process

Finally, a review of the disciplinary procedure observed by the prison staff establishes Martinez's due process rights were adequately protected. A prison official's failure to comply with a disciplinary proceeding regulation does not prejudice an inmate's due process rights, so long as the inmate still received: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for disciplinary action. *See Arias v. Barnes*, 2019 WL 9244885, at *6.

The record establishes the disciplinary procedure followed in this matter met these three requirements. First, Martinez received advance written notice advising him of the disciplinary charges against him: he was provided an incident report on March 16, 2022, the day after he was discovered with a cell phone cord and charging port on March 15, 2022. Dkt. No. 6 at 4. On March 16, Martinez was also advised of his right to call witnesses and present documentary evidence in his defense at his forthcoming DHO hearing. Dkt. No. 8, Ex. G. Martinez waived his right to a staff representative and declined to call witnesses at the DHO hearing held on March 31, 2022. *Id.*, Ex. F. The DHO hearing on the incident report was held on March 31, 2022. Martinez was also given an opportunity to make a statement in his defense at the DHO hearing, but stated only "no comment." *Id.*, Ex. G. Third, Martinez was provided a written statement by the factfinder, the DHO, explaining the evidence relied upon and her reasoning for the outcome, on May 23, 2022. *Id.* Accordingly, the disciplinary process observed by prison officials in this matter adequately safeguarded Martinez's due process rights. *See Arias v. Barnes*, 2019 WL 9244885, at *6.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS Martinez's habeas petition [Dkt. No. 1] be DENIED with prejudice.


Dated: June 2, 2023                             s/David T. Schultz
                                                DAVID T. SCHULTZ
                                                U.S. Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).